IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2018 JAN 18 AM 8: 24

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff,**<br><br>**v.**<br><br>**$55,755.00, MORE OR LESS,**<br>**IN U.S. CURRENCY,**<br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.

A18CV0038 RP

## VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff United States of America, by and through the United States Attorney for the Western District of Texas, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and respectfully states as follows:

### I.   NATURE OF THE ACTION

1.   This action is brought by the United States seeking forfeiture to the United States of the following property: **$55,755.00, More or Less, in U.S. Currency (hereinafter "Defendant Property").**

### II.   STATUTORY BASIS FOR FORFEITURE

2.   This is a civil forfeiture action *in rem* brought against the Defendant Property for violation of 21 U.S.C. §§ 801 *et seq.,* and subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), which states:

**§ 881. Forfeitures**
  **(a) Subject property**
    The following shall be subject to forfeiture to the United States and no property right shall exist in them:
      …
        **(6)** All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled

substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

### III.   JURISDICTION AND VENUE

3.      Under 28 U.S.C. § 1345, the Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), the Court has jurisdiction over an action for forfeiture.  This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. §§ 1355(b) and 1395.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this District and because the Defendant Property is found in this District.  *See also* 28 U.S.C. § 1395(b).

5.      The $55,755.00 in U.S. Currency was seized in Austin, Texas on July 29, 2017, by the Austin Police Department (APD) in conjunction with the Drug Enforcement Administration (DEA).  The Defendant Property has remained in the custody of the DEA, within the jurisdiction of the United States District Court, Western District of Texas, and shall remain within the jurisdiction of the court pending litigation of this case.

### IV.   FACTS IN SUPPORT OF FORFEITURE

6.      In the early evening of July 29, 2017, a Transportation Security Administration operator, working at the x-ray screening area at Checkpoint No. 1 at the Austin Bergstrom International Airport (ABIA), noticed a long bar-like object in a carry-on bag belonging to William E. Thomas, III (Thomas).  TSA does not permit any objects that may potentially be used as clubs on flights.  As a security precaution, the TSA Operator called for a bag check.  Thomas was escorted to a secondary screening area.  While searching for the bar-like object, the TSA

Screener located multiple stacks of money wrapped in rubber bands and called for a TSA Supervisor.[1]

7.      Law enforcement personnel are aware of a recent increase in the amount of marijuana being trafficked from the State of California to Austin, Texas.  The officers have also seen a related increase in the number of cash seizures at the ABIA related to illegal narcotics trafficking from California.  These cash seizures are usually taken from a person who has just delivered the narcotics or is enroute to purchase narcotics (typically with the proceeds from the sale of same).  In the drug trade, currency is commonly transported in multiple rubber-banded stacks, similar to the stacks found in Thomas' luggage.

8.      Officers from the Austin Police Department (APD) were called to investigate the matter further.  In turn, a K9 unit with the APD and the DEA were called as part of the investigation.

9.      While Thomas' identification was being confirmed, APD officers spoke with Thomas about the large amount of cash he was carrying.  Thomas stated t that he recently sold a 2005 Corvette which is why he had the large amount of cash, *i.e.,* about $54,000.  Meanwhile, it was determined that Thomas had an outstanding Travis County warrant for his arrest based on a theft charge.  Due to the warrant, Thomas was taken into custody and notified of his Miranda rights.

10.      Another officer arrived and interviewed Thomas.  Upon being asked about the currency he was carrying, Thomas laughed and replied that he lives in California (but was raised in Texas) and buys and sells cars.  He explained that he buys cars from an auction house in San Francisco and sells them in Texas because he knows a lot of people here.  When asked where he

---

[1] The bar was also discovered and found to be part of an abdominal exercise roller.

lived, Thomas did not provide an address, but instead stated that he had a place in Hollywood with his wife and also a house in Sacramento because that was close to San Francisco. Thomas stated that the name of his business is Thomas, Inc. The Officer asked what he did for Thomas, Inc., and Thomas laughed again as he replied that he bought and sold cars. Thomas also stated that he worked with his father in investments. Thomas laughed multiple times while answering questions even though nothing was funny. The officer's training and experience informed him that inappropriate laughter is often a sign of deception.

11.     Thomas was asked if he had a dealer's license, and he replied that he did. But when asked to produce a copy of the dealer's license, Thomas said that he would have to call his accountant so that she would fax it over. Thomas further stated that he had been in the car business for two years. He stated that a car was being delivered to Austin for him, but he did not know the address of where the car was being delivered. When the officer asked Thomas again what type of car he had sold, Thomas replied that it was a Corvette, and eventually he answered that it was a 2011 (which conflicted with his earlier statement).

12.     The officer sought to verify Thomas' sale of the Corvette. But Thomas could not provide any receipts regarding the transport of the Corvette, did not have documentation regarding the sale, and did not even have photos of the Corvette. Thomas also could not provide the name of the shipping company for the Corvette, instead saying that he used multiple companies. Thomas reiterated that his accountant had the information, but because she was not working that day, he could not produce any documentation. When asked for the sales price of the Corvette, Thomas sighed before responding that he sold the Corvette for $60,000. Thomas said he sold the Corvette to Elliot Saks (Saks) from San Antonio, and there was a little less than $54,000 in the Nike carry-on bag. When asked for Saks' phone number to verify the sale,

Thomas stated that he could not provide a phone number for the purchaser of the Corvette because Thomas only contacted him through Snapchat.[2]

13.     While Thomas was being interviewed, a certified drug dog conducted a free air sniff on the luggage belonging to Thomas.  The drug dog confirmed that there were no narcotic odors in the hallway area that contained more than a dozen bags (excluding Thomas' bags).  But once Thomas' two checked bags were placed in the same hallway area with the dozen luggage bags, the drug dog positively alerted to both checked bags belonging to Thomas.  The two bags were then removed, and the screened Nike carry-on bag was placed in the hallway area on the opposite side.  The drug dog again gave a positive alert for the presence of an illegal narcotics odor on the Nike carry-on bag carried by Thomas.

14.     When Thomas was informed about the positive narcotics alerts by the drug dog, his reply was, "there are no narcotics in my bags."  Thomas gave written consent to search his luggage, which included the two checked bags and the Nike carry-on that was screened.  Prior to searching the luggage, the officer asked Thomas if he smoked marijuana.  Thomas replied that he did not, but he had left his bags overnight at a friend's house who does smoke marijuana.

15.     Upon searching the two checked bags, officers found a variety of blue jeans (with sizes ranging from 32 to 38 waist and 30 to 34 length), wrinkled suit pants, and approximately five t-shirts.  The luggage did not contain any shoes, shorts, or toiletries.  Based on the officer's training and experience, the suitcases appeared to be filled with "prop clothing," a method utilized by narcotics smugglers to disguise themselves as legitimate travelers.  The clothes in the bags were wrinkled and ragged in comparison to the nice clothes that Thomas was wearing.  The officer asked Thomas about his waist size, and Thomas answered size 36.  According to his

---

[2] Snapchat is a mobile application that deletes all messages and images after a short period of time.

driver's license, Thomas is 6'1". Thus, Thomas would most likely wear a 34 inseam, as opposed to the 30 inseam or 32 inseam pants inside the bags.

16.     The Nike carry-on bag had a few pieces of clothing, a toiletry bag, the abdominal exercise roller, and multiple rubber banded stacks of currency. The officer also found several of the rubber banded stacks of money concealed inside a pant leg. The money stacks were rubber banded according to denominations. Inside the toiletry bag, officers located a zip lock bag with several white pills suspected of being Xanax, for which Thomas claimed to have a prescription at home in California. Thomas' wallet was also searched and contained the following:

     a.   Three business cards from Jason Baker, Deputy Probation Officer, Adult Probation Unit, Sutter County, California;
     b.   A business card for Attorney Robert Keates, Austin, Texas;
     c.   Several frequent player cards from various casinos;
     d.   $555 in cash;
     e.   Two receipts; and
     f.   and Thomas' California Driver's License.

17.     The receipts contained in Thomas' wallet were both from Grower Supply House in Sacramento, California. Both receipts were dated June 13, 2017; one receipt was for $1,544.56 and the second receipt for $25.29. Both receipts were for items commonly used to cultivate marijuana.

18.     Thomas was questioned about the Grower Supply House receipts. Initially Thomas denied knowing about the receipts. The officer then asked Thomas if he was involved in any other businesses besides cars and working with his father. Thomas replied that he was not. Thomas, however, eventually admitted that he was involved with a small marijuana grow operation in Northern California and that he only invested and paid for the business.

19.     The officer commented on the fact that Thomas had flown into Austin on July 27, 2017, and had three bags of luggage for a three-day stay in Austin. Thomas dismissed this

observation by stating that he had brought gifts for his family because they had attended his wedding in California and that was why the suitcases were almost empty.

20.     The officer told Thomas that he suspected Thomas was a smuggler who had brought marijuana to Austin and that the Defendant Property was proceeds from the sale of marijuana.     Thomas never denied these statements; instead, Thomas provided counter accusations and deceptive answers.   Throughout the interview, the officer observed that Thomas constantly deflected the officer's questions, answered a question with a question, and provided long unnecessary explanations or conflicting answers.   All of these observations are consistent with deceptive behavior based upon the training and experience of the officer.

21.     The officer inquired whether Thomas had ever been arrested.   After a delay, Thomas replied, "in Texas?"   The officer clarified the question as to all arrests.   Thomas answered with his arrest history but omitted any arrests outside of Texas.   Once Thomas was asked again about *all* arrests, Thomas stated that he had been arrested in Kingman, Arizona with 16 pounds of marijuana as he was heading from California to Texas but denied that the marijuana belonged to him.

22.     The officer then informed Thomas that based on the positive alert to the presence of narcotics on the luggage and Thomas' conflicting stories, the DEA was seizing the money as drug proceeds.

23.     The outstanding warrants for which Thomas was arrested were Travis County misdemeanors.   Thomas' criminal history, however, includes a felony conviction for Attempted Transportation of Marijuana for Sale.   *See State of Arizona v. William Edward Thomas,* No. CR-2015-01405, Superior Court, Mohave County, Arizona.[3]   Thomas was sentenced to four years'

---

[3] The offense occurred in 2015; the judgment date was July 22, 2016.

probation starting on July 22, 2016.  Thus, when Thomas was arrested on the outstanding Travis County warrant, he was under supervision by the Sutter County Probation Department in Yuba City, California.  Thomas other criminal arrests/history starts when he was 18 years old and includes arrests in Bell County, Bexar County, and Travis County, Texas.  The charges include Driving While Intoxicated (2005, 2008, 2014); Possession of Marijuana (2009); Criminal Mischief/Trespass (2010); Driving with a Suspended License (2014); and Evading Arrest (2014).

24.    On September 22, 2017, the DEA provided Thomas with notice of the seizure of the Defendant Property and its intention to administratively forfeit the Defendant Property pursuant to the Controlled Substances Act (21 U.S.C. §§ 801 *et seq.*).  On October 19, 2017, Thomas submitted an administrative claim to the DEA, contesting the forfeiture of the Defendant Property.

25.    Based on the foregoing facts, it is reasonable to believe that the Defendant Property is subject to forfeiture given:  (1) the large amount of cash seized; (2) the positive drug dog alert on the luggage; (3) the conflicting statements provided by Thomas; (4) Thomas' inability to provide any contact information, documentation, and/or photo of the vehicle sale; and (5) Thomas' criminal history.  In other words, it is reasonable to believe that the Defendant Property constitutes property involved in or used to facilitate a transaction related to the buying and selling of narcotics and/or constitutes or is derived from proceeds of drug transactions. Therefore, the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) for the violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*

## V.   **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the United States prays that due process issue to enforce the forfeiture of the Defendant Property, that due notice, pursuant to Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed,[4] that a warrant for an arrest in rem be ordered, that the Defendant Property be forfeited to the United States of America, that the Defendant Property be disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

Respectfully submitted,

JOHN F. BASH
UNITED STATES ATTORNEY

By:

DANIEL M. CASTILLO
Assistant United States Attorney
Texas State Bar No. 00793481
816 Congress Avenue, Suite 1000
Austin, Texas 78701
Tel: (512) 916-5858
Fax: (512) 916-5854
Email: Daniel.Castillo@usdoj.gov

ATTORNEYS FOR PLAINTIFF,
UNITED STATES OF AMERICA

---

[4]Appendix A, Notice of Complaint of Forfeiture, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Defendant Property.

## **VERIFICATION**

Task Force Officer Jeff Brennecke declares and says that:

1.      I am a Task Force Officer with the Drug Enforcement Administration assigned to the Austin Resident Office.  I am the investigator responsible for the accuracy of the information provided in this litigation.

2.      I have read the above Verified Complaint for Forfeiture and know the contents thereof.  The information contained in the Verified Complaint for Forfeiture has been furnished by official government sources, and based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of January, 2018.

Jeff Brennecke, Task Force Officer
Drug Enforcement Administration
Austin Resident Office

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2018 JAN 18  AM 8: 25

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | CIVIL ACTION NO. |
| | ) | |
| **$55,755.00, MORE OR LESS,** | ) | |
| **IN U.S. CURRENCY,** | ) | **A18CV0038RP** |
| **Defendant.** | ) | |

## NOTICE OF COMPLAINT FOR FORFEITURE

1.      On January 17, 2018, a Verified Complaint for Forfeiture *in rem* was filed in this

Court by the United States Attorney for the Western District of Texas, against the below-

described property, which is also specifically described in the Verified Complaint for Forfeiture,

for violation of 21 U.S.C. §§ 801 et seq., and subject to forfeiture to the United States of

America pursuant to 21 U.S.C. § 881(a)(6), namely:

**$55,755.00, More or Less, in U.S. Currency**

**(hereinafter "Defendant Property").**

2.      Pursuant to Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime

Claim and Asset Forfeiture Actions (hereinafter "Supplemental Rules"), notice to any person

who reasonably appears to be a potential claimant shall be by direct notice.  Accompanying this

notice is the Verified Complaint for Forfeiture which has been filed in this cause and which

describes the Defendant Property.  Pursuant to Supplemental Rule G(4)(b), any person claiming

an interest in the Defendant Property who has received direct notice of this forfeiture action must

file a Claim, in compliance with Rule G(5)(a), with the court **within 35 days after the notice**

**was sent, if delivered by mail, or within 35 days of the date of delivery, if notice was**

APPENDIX A

**personally served**.  An Answer or motion under Rule 12 of the Federal Rules of Civil Procedure must then be filed within **21 days** of the Claim being filed.

      3.      The Claim and Answer must be filed with the Clerk of the Court, 501 W. Fifth Street, Austin, Texas 78701, and copies of each must be served upon Assistant United States Attorney Daniel M. Castillo, 816 Congress Avenue, Suite 1000, Austin, Texas 78701, or default and forfeiture will be ordered.  *See* 18 U.S.C. § 983(a)(4)(A) and Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claim and Asset Forfeiture Actions.

      4.      Failure to follow the requirements set forth above will result in a judgment by default taken against you for the relief demanded in the complaint.

APPENDIX A

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$55,755.00, More or Less, in U.S. Currency

**A18CV0038RP**

**(b)** County of Residence of First Listed Plaintiff Travis
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Travis County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
United States Attorney's Office
Daniel M. Castillo, AUSA
816 Congress Ave., Suite 1000, Austin, TX 78701, (512) 916-5858

Attorneys *(If Known)*
Alfonso C. Hernandez, 507 W. 10th Street, Austin, TX 78701
(512) 472-7627

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. Sec. 801 et seq
Brief description of cause:
Drug Proceeds

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE

DOCKET NUMBER

DATE
01/17/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #

AMOUNT

APPLYING IFP

JUDGE Pitman

MAG. JUDGE

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **$55,755.00, MORE OR LESS,** | ) | |
| **IN U.S. CURRENCY,** | ) | **A18CV0038 RP** |
| **Defendant.** | ) | |

## ORDER FOR WARRANT OF ARREST OF PROPERTY

WHEREAS a Verified Complaint for Forfeiture *in rem* was filed on January 17, 2018, against the following Property:

### $55,755.00, More or Less, in U.S. Currency

**(hereinafter "Defendant Property")**, alleging that the Defendant Property is subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6) for violation of 21 U.S.C. §§ 801 et seq.; IT IS THEREFORE

ORDERED that a Warrant for the Arrest of Defendant Property issue as prayed for, and that the United States Marshals Service for the Western District of Texas, or any other law enforcement officer, or any other person or organization authorized by law to enforce the warrant, be commanded to arrest the Defendant Property and take it into possession for safe custody as provided by Rule G, Supplemental Rules of Federal Rules of Civil Procedure until further order of the Court, and to use whatever means may be appropriate to protect and maintain the Defendant Property while in custody, including designating a substitute custodian or representative for the purposes of maintaining the care and custody of the Defendant Property and to make a return as provided by law.

SIGNED this _____ day of _____, 2018.


_____
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **$55,755.00, MORE OR LESS,** | ) | |
| **IN U.S. CURRENCY,** | ) | **A18CV0038 RP** |
| **Defendant.** | ) | |
| | ) | |

## WARRANT FOR THE ARREST OF PROPERTY

TO THE UNITED STATES MARSHALS SERVICE OR OTHER AUTHORIZED LAW ENFORCEMENT OFFICER OR ANY OTHER PERSON OR ORGANIZATION AUTHORIZED BY LAW TO ENFORCE THE WARRANT:

WHEREAS a Verified Complaint for Forfeiture *in rem* was filed on January 17, 2018, against the following Property:

### $55,755.00, More or Less, in U.S. Currency

**(hereinafter "Defendant Property")**, alleging that the Defendant Property is subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6) for violation of 21 U.S.C. §§ 801 et seq., and

WHEREAS an Order has been entered by the United States District Court for the Western District of Texas that a Warrant for the Arrest of Defendant Property be issued as prayed for by Plaintiff United States of America,

YOU ARE THEREFORE COMMANDED to arrest the Defendant Property as soon as practicable by serving a copy of this warrant on the custodian in whose possession, custody, or control the Defendant Property is presently found and to use whatever means may be appropriate to protect and maintain the Defendant Property in your custody until further order of this Court,

including designating a substitute custodian or representative for the purposes of maintaining the

care and custody of the Defendant Property and to make a return as provided by law.

SIGNED this _____ day of _____ _____ _____, 2018.

JEANNETTE J. CLACK
United States District Clerk
Western District of Texas

By: _____ _____ _____ ____

Deputy